2014 OK 68

**Erica WOOD, Plaintiff–Appellant,**

v.

**MERCEDES–BENZ OF OKLAHOMA CITY, Defendant–Appellee.**

No. 108555.

Supreme Court of Oklahoma.

July 16, 2014.

Rehearing Denied Sept. 22, 2014.

458

Thomas K. Ventura, Law Offices of Daniel M. Davis, Oklahoma City, Oklahoma, for Plaintiff–Appellant.

Rodney Ramsey, Michael Gray, Ramsey and Gray, P.C., Oklahoma City, Oklahoma, for Defendant–Appellee.

GURICH, J.

### Facts & Procedural History

¶ 1 Erica Wood was employed by Ned's Catering, Inc. On March 8, 2008, Wood reported to Mercedes–Benz of Oklahoma City to assist with a catered event at the car dealer's facility. Upon arriving at the dealership, Wood drove around the parking lot searching for a place to park her vehicle. Wood noticed ice on the grass, pavement, and sidewalks surrounding the Mercedes–Benz facility. Wood testified in her deposition that "[t]he whole building was covered in ice, all the way around, all the sidewalks." [1] Although the nighttime temperatures had been freezing, precipitation was not a factor in creating the icy conditions, and Wood did not encounter any ice on the roads while driving to the dealership. A sprinkler system, which had been serviced the day before, activated overnight, causing ice to cover surfaces throughout the entire property of the dealership.

¶ 2 After parking her car, Wood walked to the east entrance of the dealership. To reach the door, Wood had to cross grass and a sidewalk that were coated with ice. Wood was wearing common "food industry" non-slip shoes and claimed she was "very careful as she walked in." After entering the building, Wood was unable to locate her supervisor at Ned's Catering. She proceeded back outside to retrieve a cell phone from her vehicle to contact the supervisor.[2] Wood testified that there was "an incline on the east side, on the grass, [like] a little hill" outside the entrance.[3] Wood "knew ... it was important to be careful" because she had observed ice covering the entire area around the entrance and "honestly believe[d][she] was as careful as [she] could be" traversing the ice.[4] Nevertheless, Wood alleged she slipped on the ice, fell flat on her back, and sustained injuries. Subsequently, Wood discussed the accident with an employee of the dealership who acknowledged, "[y]eah, I should have [put salt down] when I got here." [5]

*Sheffer v. Carolina Forge Co., L.L.C.*, 2013 OK 48, ¶ 11, 306 P.3d 544, 548.

1. Deposition of Erica Wood, page 17, lines 6–25, cited in Defendant, Mercedes–Benz of Oklahoma City's Motion for Summary Judgment with Brief in Support.

2. This Court recognizes that the Appellee, Mercedes–Benz, maintains that Wood's retrieval of her cell phone was purely personal. For purposes of summary judgment, we view the facts in a light most favorable to the non-moving party.

3. Deposition of Erica Wood, Page 21, lines 21–25, cited in Defendant, Mercedes–Benz of Oklahoma City's Motion for Summary Judgment with Brief in Support.

4. *Id.* Page 24, lines 7–8.

5. *Id.* Page 35, lines 2–7.

¶ 3 Wood sued Mercedes–Benz of Oklahoma City, alleging negligence based on the company's failure to maintain its premises in a reasonably safe condition. Mercedes–Benz denied liability and later filed a motion for summary judgment. The District Court granted summary judgment in favor of the dealership without specifying a basis for its decision. The Court of Civil Appeals affirmed, holding Mercedes–Benz owed no legal duty because "Wood readily acknowledges the ice presented a known danger." Wood sought review in this Court, and we granted certiorari to address the propriety of summary judgment.

### Standard of Review

 ¶ 4 This appeal stems from a grant of summary judgment, which calls for de novo review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Under the de novo standard, this Court is afforded "plenary, independent, and non-deferential authority to examine the issues presented." *Harmon v. Cradduck*, 2012 OK 80, ¶ 10, 286 P.3d 643, 648. When examining an order sustaining summary judgment, this Court must determine whether the record reveals disputed material facts. *Sheffer v. Carolina Forge Co., L.L.C.*, 2013 OK 48, ¶ 11, 306 P.3d 544, 548. Even when basic facts are undisputed, motions for summary judgment should be denied, if from the evidence, reasonable persons might reach different inferences or conclusions. *Id.* All facts and inferences must be viewed in a light most favorable to the party opposing summary adjudication. *Id.*

### Analysis

 ¶ 5 Traditionally, in premises liability cases we have applied the common law's tripartite classification system for assessing landowner liability for injuries sustained on the property. The initial determination to be resolved in these cases has been the "entrant's status-based classification under traditional common law terms—trespasser, licensee or invitee." *Scott v. Archon Group, L.P.*, 2008 OK 45, ¶ 18, 191 P.3d 1207, 1211. We held that a property owner, as an invitor, owes the highest duty of care to an invitee.[6] *Pickens v. Tulsa Metro. Ministry*, 1997 OK 152, ¶ 10, 951 P.2d 1079, 1084. Our prior opinions obligate a landowner to "exercise reasonable care to keep the premises in a reasonably safe condition and to warn [an invitee] of conditions which [are] in the nature of hidden dangers, traps, snares or pitfalls." *Martin v. Aramark Services, Inc.*, 2004 OK 38, ¶ 5, 92 P.3d 96, 97.

¶ 6 Our opinions have generally eliminated a landowner's duty to protect a third-party for "dangers so 'open and obvious' as to reasonably expect others to detect them for themselves." *Williams v. Tulsa Motels*, 1998 OK 42, ¶ 6, 958 P.2d 1282, 1284. These cases have reasoned that an open and obvious hazard relates directly to the foreseeability of a danger, and therefore, affects a landowner's duty. *See, e.g., Kastning v. Melvin Simon & Associates, Inc.*, 1994 OK 68, ¶ 10, 876 P.2d 239, 240.

 ¶ 7 However the open and obvious doctrine is not absolute under our case law. For claims predicated on negligence, the threshold question is the existence of a duty. *Miller v. David Grace, Inc.*, 2009 OK 49, ¶ 11, 212 P.3d 1223, 1227. Whether a duty existed is a question of law. *Id.* The relevant inquiry for assessing the existence of a duty in negligence cases was described as follows:

One of the most important considerations in establishing a duty is foreseeability. Foreseeability is critical as it determines (1) to whom a duty is owed and (2) the extent of the duty. A defendant owes a duty of care only to foreseeable plaintiffs. As for the extent of the duty, it too is determined in great part by the foreseeability of the injury. Whenever the cir-

---

**6.** An invitee is defined as one who uses the premises of another for the purpose of a common interest and mutual advantage. *Brown v. Nicholson*, 1997 OK 32, ¶ 6, 935 P.2d 319, 321. In the typical case, the invitee can protect herself by leaving the premises when an open and obvious hazard is encountered or by avoiding the premises altogether. In this case, neither of these choices was available to Wood. She was not a customer of the dealership, but was present to fulfill her employer's contractual duty to provide service for an event sponsored by the dealer. Wood's presence and exposure to the hazardous icy condition was compelled to further a purpose of the dealership.

cumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises.

*Weldon v. Dunn*, 1998 OK 80, ¶ 11, 962 P.2d 1273, 1276 (citations omitted). Applying the foreseeability test in a premises liability case, we explained that a landowner "does have a duty to exercise ordinary care to prevent injury to another whenever the circumstances are such that the owner, as an ordinary prudent person, could reasonably foresee that another will be in danger of injury as a probable consequence of the *owner's actions*." *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 6, 976 P.2d 1043, 1045 (citation omitted and emphasis added).

¶ 8 More specifically, we have rejected the open and obvious doctrine for a hazardous accumulation of ice, caused or enhanced by a landowner, and determined the creation of such a dangerous condition would impose a legal duty on the owner to exercise care for the protection of third parties. *Krokowski v. Henderson Nat. Corp.*, 1996 OK 57, ¶¶ 7–8, 917 P.2d 8, 11.[7] In *Krokowski*, an apartment tenant slipped and fell on an icy sidewalk while walking from the parking lot to his apartment. *Id.* ¶ 2, 917 P.2d at 10. The tenant claimed the landlord had installed a drain pipe in such a way that, when it rained, water would unnaturally pool around the pipe. *Id.* ¶ 1, 917 P.2d at 11. Additionally, the tenant presented evidence that the pooling caused a hazard greater than what was normally present when natural freezing conditions occurred. *Id.* ¶ 7, 917 P.2d at 11. We found that evidence presented to the trial court could show that the condition "causing the tenant's injury may have resulted from

an increased natural hazard brought about by the landlord's placement of the drain pipe." *Id.* "Because reasonable people could differ on whether the [tenant's] fall was caused by a natural accumulation of ice or by an increase in the natural hazard caused by the placement of the drain pipe," summary judgment was improper. *Id.* ¶ 8, 917 P.2d at 11.

¶ 9 We agree with Wood that under the peculiar facts of this case, Mercedes–Benz owed a duty to take remedial measures to protect her from the icy conditions surrounding the entry to its facility. The accumulation of ice throughout Mercedes–Benz' facility was caused by the activation of the dealership's sprinkler system during freezing temperatures; not by a natural condition. The dealership had notice of the icy conditions surrounding the entire building and knew that Ned's Catering was sending its employees to the facility to cater the business' scheduled event. As such, it was foreseeable that Ned's Catering employees would encounter the icy hazards created by the sprinkler system and would likely proceed through the dangerous condition in furtherance of their employment.[8]

### Conclusion

¶ 10 We find that Mercedes–Benz had a duty to take precautionary measures for the employees of Ned's Catering. Further, we find there is a question of fact regarding whether Mercedes–Benz breached its duty toward Wood, requiring submission of this matter to a jury. Judgment of the trial court is reversed, the opinion of the Court of Civil Appeals is vacated, and the cause is remanded for further proceedings consistent with this opinion.

---

7. Our cases generally recognize a distinction between hazards occurring naturally versus those which are created or aggravated through some action of the landowner. *See, e.g., Dover v. W.H. Braum, Inc.*, 2005 OK 22, ¶¶ 7–8, 12, 111 P.3d 243, 245–246 (affirming summary judgment for landowner where no evidence demonstrated store had knowledge of icy conditions and "no act on the part of [store] ... [created] a greater hazard than that brought about by natural causes").

8. Our opinion should not be construed as abrogating the open and obvious defense in all cases. The icy condition is not dispositive of Mercedes–Benz' duty in this case because Wood was required to cross the hazardous condition in furtherance of her employment. As opposed to a random customer appearing at the dealership, Mercedes–Benz knew that employees of Ned's Catering would be arriving and would be required to enter the building.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; MATTER REMANDED FOR FURTHER PROCEEDINGS**

¶ 11 COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, GURICH, JJ., concur.

¶ 12 KAUGER, WINCHESTER, TAYLOR (by separate writing), COMBS (by separate writing), JJ., dissent.

TAYLOR, J., dissenting:

¶ 1 I respectfully dissent to the Court's decision rendered today. The Court ignores our long-standing laws regarding the open-and-obvious doctrine and the duty in a premises-liability action in order to obtain the result it reaches.

¶ 2 The facts are undisputed. On March 8, 2008, the plaintiff was an employee of a catering company hired by the defendant to assist with an event at defendant's business. The plaintiff drove to the defendant's business, arriving about 8:45 a.m. When she arrived, the plaintiff drove around the building looking for a parking place. As she drove around, the plaintiff noticed ice on the street, grass, and sidewalks around the building, including those on the east side. The ice was localized to the building, and there was no ice on the public streets that morning. The plaintiff parked her car on the east side of the building and walked into the building, having traversed over grass and a sidewalk that were icy. Because of the ice, the plaintiff was cautious and careful. The plaintiff could not locate her supervisor in the building, and she started back to her car to retrieve her cell phone. When the plaintiff left the building, she was as "careful as she could be" because of the ice, but she slipped and fell in spite of her caution. The plaintiff later learned that the sprinkler had been on earlier that morning.

¶ 3 It is undisputed that the plaintiff drove up to the building and observed the ice everywhere. She got out of her car and walked across the ice the first time and somehow survived the journey without mishap. The plaintiff admitted that after surviving one journey over the ice, she made the choice to go back for more. She knew of the dangerous, icy conditions; and this time she fell down. The second journey over the ice was her choice and at her peril and was not required by the defendant, according to the facts presented in the record before this Court. Nothing in the facts show the plaintiff was required to return to her car for her cell phone rather than use the defendant's business phone or some other phone to contact her boss. It is folly to suggest that the only phone she could use was the phone on the other side of the open and obvious ice. No one but the plaintiff is responsible for the consequences of her decision. There is nothing about her status as an employee of the catering company that exempts her from this Court's decades of adherence to the open-and-obvious doctrine or changes her status as an invitee.

¶ 4 The Court's decision shows a lack of judicial restraint as well as disrespect for this Court's long-standing jurisprudence and the rule of law. Grounded in the common law, this Court has long recognized actionable negligence has three elements: (1) a duty owed by the defendant to the plaintiff, (2) the defendant's failure to perform the duty, and (3) an injury to the plaintiff caused from the defendant's failure to perform the duty. *Faurot v. Okla. Wholesale Grocery Co.*, 1908 OK 85, ¶ 9, 95 P. 463, 465. "The threshold question in any negligence action is whether the defendant has a duty to the plaintiff." *Sholer v. ERC Mgmt. Group, LLC*, 2011 OK 24, ¶ 11, 256 P.3d 38, 43. The lack of any one element, including a duty owed by the defendant, defeats a claim for actionable negligence. *Id.* This rule remains as vital today as it was in 1908. *Id.; Scott v. Archon Group, L.P.*, 2008 OK 45, ¶ 1, 191 P.3d 1207, 1208; *Tucker v. ADG, Inc.*, 2004 OK 71, ¶ 17, 102 P.3d 660, 667 ("In the first instance, there is no need for any defense at all because where there is no duty or negligence there can be no liability.")

¶ 5 As early as 1931, this Court recognized the common-law rule of premises liability that an owner or occupant "is under no legal duty to reconstruct or alter premises so as to obviate known and obvious dangers" and is

not "liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care." *City of Tulsa v. Harman*, 1931 OK 73, ¶ 37, 299 P. 462, 463. Until today, this Court has consistently adhered to this premises-liability rule. *Sholer*, 2011 OK 24, ¶ 2, 256 P.3d at 40; *Archon Group*, 2008 OK 45, ¶ 21, 191 P.3d at 1212; *Tucker*, 2004 OK 71, ¶ 13, 102 P.3d at 666; *Kastning v. Melvin Simon & Assoc., Inc.*, 1994 OK 68, ¶¶ 6, 10, 876 P.2d 239, 240; *Turner v. Rector*, 1975 OK 172, ¶ 10, 544 P.2d 507, 509 (citing *Jackson v. Land*, 1964 OK 102, 391 P.2d 904 (Syllabus by the Court)); *Nicholson v. Tacker*, 1973 OK 75, ¶ 18, 512 P.2d 156, 159 ("The presence of an open and obvious danger is akin to the defendant nailing a 'Danger' sign on the premises."); *C.R. Anthony Co. v. Million*, 1967 OK 231, ¶¶ 7–8, 435 P.2d 116, 118; *Rogers v. Cato Oil & Grease Co.*, 1964 OK 152, ¶¶ 21–22, 396 P.2d 1000, 1004–05; *Jackson*, 1964 OK 102, ¶ 0, 391 P.2d 904 (Syllabus by the Court, No. 3); *City of Drumright v. Moore*, 1946 OK 203, ¶¶ 9–14, 197 Okla. 306, 170 P.2d 230, 233.

¶ 6 This Court has refused to limit the open-and-obvious doctrine whenever it has come under attack. *Tucker*, 2004 OK 71, ¶ 17, 102 P.3d at 667; *Buck v. Del City Apartments, Inc.*, 1967 OK 81, ¶ 23, 431 P.2d 360, 366; *see Lohrenz v. Lane*, 1990 OK 18, ¶ 16, 787 P.2d 1274, 1276 ("Appellant [a trespasser] argues that this is the modern view and that to follow the common law would be to maintain an 'ancient and archaic citadel of class privilege' which is out of step with current trends of Tort Law."); *Midland Valley R.R. v. Graney*, 1919 OK 315, ¶ 3, 77 Okla. 54, 185 P. 1088, 1088 ("[W]here there is no evidence reasonably tending to show that the defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury.").

¶ 7 In *Tucker*, this Court declined to change the common-law rule regarding open-and-obvious dangers and recognized that the rule is consistent with article 23, section 6 of the Oklahoma Constitution. 2004 OK 71, ¶ 17, 102 P.3d at 667. This Court found that the defenses of assumption of the risk and contributory negligence need not be submit-

ted to a jury where an invitee was injured from an open-and-obvious danger "because where there is no duty or negligence there can be no liability." *Id.* *Tucker* remains the law today regarding an open-and-obvious danger. *Scott*, 2008 OK 45, ¶¶ 1, 21, 191 P.3d at 1208, 1212 (finding no duty to warn invitee of open-and-obvious danger); *see Sholer v. ERC Mgmt. Group, LLC*, 2011 OK 24, 256 P.3d 38 (finding whether a danger is open and obvious may be a question for a jury and reaffirming the rule that there is no duty to warn of an open-and-obvious danger).

¶ 8 The Court's reliance on *Krokowski v. Henderson National Corp.*, 1996 OK 57, 917 P.2d 8, is misplaced. We have never, in *Krokowski* or any other case, "rejected the open and obvious doctrine for a hazardous accumulation of ice, caused or enhanced by a landowner." In *Krokowski*, the plaintiff asserted that the invitor increased the risk of danger from a naturally occurring accumulation of ice and that a drain pipe's placement increased the natural hazard. Nothing in *Krokowski* indicates that the increased hazard was open and obvious or that the plaintiff in the case recognized the risk of walking on the increased hazard when he was injured. *Krokowski* did not address the invitor's liability for an increased hazard which was open and obvious.

¶ 9 The Court relies on *Weldon v. Dunn*, 1998 OK 80, 962 P.2d 1273, for its new rule of law that any foreseeable risk creates a duty of care. This new rule of law has no support in *Weldon;* rather, the Court takes language out of context to bolster its position. The particular language states: "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises." *Id.* ¶ 11, 962 P.2d at 1276 (citing *Bradford Sec. Processing Servs. v. Plaza Bank & Trust*, 1982 OK 96, ¶ 6, 653 P.2d 188, 190). An invitor would not foresee that an invitee would be injured by open-and-obvious dangers "which are so apparent or readily observable that one would reasonably expect them to be discovered."

*Id.* ¶ 12, 962 P.2d at 1276–77. In *Weldon,* this Court found that the invitor owed no duty to the invitee even though the risk was foreseeable because the danger was open and obvious.

¶ 10 Today's decision abandoning the open-and-obvious doctrine and changing the duty in premises-liability actions has far-reaching implications. If, for example, a pile of bananas falls in the middle of a grocery store floor, a customer sees the banana pile and is aware of the risk of slipping on the bananas, and the customer walks back and forth over the bananas until the customer finally falls and is injured, the store may now liable under the Court's new rule. I cannot abide a new rule of law that would allow an invitee to recover when she ignores an open-and-obvious risk merely because the risk was foreseeable. Surely the banana pile would pose a foreseeable risk but not create a duty which gives rise to liability for an injury incurred from a slip and fall. Under today's pronouncement, an invitor has a duty to warn against any foreseeable danger, no matter how absurd the result.

¶ 11 I would point out that this is not a worker's compensation claim and that the defendant is not the plaintiff's employer. I would urge my fellow members of the Court to exercise restraint in this matter. As this Court stated in *Lohrenz,* 1990 OK 18, ¶ 9, 787 P.2d 1274, 1277:

> As judges, we are accountable for interpreting the law according to precedent and sound public policy. We are not afforded the luxury of indulging in sympathetic tendencies at another's expense.

The duty of an invitor is based on the proper balance between an invitor's rights and the rights of those coming upon the property. *Id.* The Court has failed to articulate any valid reason for shifting the balance to favor an invitee. As in *Lohrenz,* we should follow our precedents in the absence of sound public policy for abandoning the current rule of law.

COMBS, J., with whom KAUGER, J., joins, dissenting:

¶ 1 The central issue of this cause is whether a property owner owes a duty of care to protect third parties from ice that is open and obvious when the actions of the landowner created or enhanced the hazard. The majority determines that the open and obvious doctrine does not apply and a duty is owed in such circumstances. Because this Court has long held that landowners have no duty to guard against open and obvious hazards, including ice an entrant is aware of, I must respectfully dissent from the majority's departure from this Court's precedent and the settled principles of the common law of Oklahoma.

## I.

**The Open and Obvious Doctrine Concerns the Existence of a Legal Duty on the Part of the Defendant, and Where There is no Duty There Can Be no Liability.**

¶ 2 Any actionable claim for negligence requires three fundamental elements: 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately resulting therefrom. *Berman v. Lab. Corp. of America,* 2011 OK 106, ¶ 16, 268 P.3d 68; *Smith v. Hines,* 2011 OK 51, ¶ 12, 261 P.3d 1129; *Scott v. Archon Group, L.P.,* 2008 OK 45, ¶ 17, 191 P.3d 1207. The threshold question in any negligence action is whether the defendant has a duty to the plaintiff. *Sholer v. ERC Mgmt. Group, LLC,* 2011 OK 24, ¶ 11, 256 P.3d 38; *Scott,* 2008 OK 45, ¶ 17, 191 P.3d 1207; *Pickens v. Tulsa Metro. Ministry,* 1997 OK 152, ¶ 8, 951 P.2d 1079. The reason for this threshold question is that **there can be no negligence in the absence of a defendant's duty to the plaintiff.** *Scott,* 2008 OK 45, ¶ 17, 191 P.3d 1207; *Tucker v. ADG, Inc.,* 2004 OK 71, ¶ 21, 102 P.3d 660; *City of Tulsa v. Harman,* 1931 OK 73, ¶ 37, 148 Okla. 117, 299 P. 462. The question of whether a duty exists is properly a question of law for the court. *Bray v. St. John Health Sys., Inc.,* 2008 OK 51, ¶ 6, 187 P.3d 721; *Scott,* 2008 OK 45, ¶ 17, 191 P.3d 1207.

¶ 3 In the specific context of premises liability, the question of what duty is owed is answered in part by the status of the entrant—a question that is the direct result of the complicated interplay between the histor-

ical rights of landowners and the evolution of the nascent common law of torts. As this Court stated in *Sutherland v. Saint Francis Hosp., Inc.*, 1979 OK 18, ¶ 5, 595 P.2d 780 (footnotes omitted):

[l]and possessor's liability in negligence for harm occurring upon the premises varies with the status of the entrant complaining of injury. Definition of duty that marks out the limit of protection afforded an entrant broadens or narrows with the beneficial interest of the possessor in the presence of the other upon the land. This has been the common law approach ever since landlord's sovereignty and immunity for acts done within the boundaries of his land gradually gave away to present-day civil accountability. When modern tort law finally incorporated possessor's liability, the concept of negligence came to be applied within the restrictive framework of relational, status-based duties. In short, the common law has never seen fit to extend its principles of general negligence (as they came to be fashioned in the last century) to govern harm occasioned on the premises of others.

¶ 4 The result of the evolution described above is the existence of the three classes of entrant discussed briefly by the majority: trespasser, licensee, and invitee. *Sholer*, 2011 OK 24, ¶ 11, 256 P.3d 38; *Scott*, 2008 OK 45, ¶ 18, 191 P.3d 1207. In *Scott*, this Court restated a concise explanation of the classes of entrant and what duty each is owed by a landowner:

"To a trespasser, a landowner owes ... only a duty to avoid injuring him wilfully or wantonly. To a licensee, an owner owes a duty to exercise reasonable care to disclose to him the existence of dangerous defects known to the owner, but unlikely to be discovered by the licensee. This duty extends to conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like. To an invitee, an owner owes the additional duty of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor. **Even *vis-a-vis* an invitee, to whom a landowner owes the highest duty in this trichotomous classification system, the law does not require that the landowner protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered.** In other words, a landowner owes to an invitee, as well as to a licensee, a duty to protect him from conditions which are in the nature of hidden dangers, traps, snares and the like. A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; the phrase is used to describe a condition presenting a deceptively innocent appearance of safety 'which cloaks a reality of danger.' **Furthermore, failure to remove known but obvious hazards by alteration or reconstruction of the premises is not a breach of the landowner's duty even to an invitee."**

*Scott*, 2008 OK 45, ¶ 19, 191 P.3d 1207 (quoting *Pickens*, 1997 OK 152, ¶ 10, 951 P.2d 1079) (emphasis added).

¶ 5 Of the three classes of entrant, the invitee is entitled to the greatest protection. *Sholer*, 2011 OK 24, ¶ 12, 256 P.3d 38; *Scott*, 2008 OK 45, ¶ 21, 191 P.3d 1207. However, as the above discussion of the types of entrants indicates, even invitees are not owed a duty by landowners to guard against open and obvious hazards on the premises. *Sholer*, 2011 OK 24, ¶ 12, 256 P.3d 38; *Scott*, 2008 OK 45, ¶ 2, 191 P.3d 1207. This rule is the essence of what has become known as the open and obvious doctrine within the common law, and which this Court has applied consistently since at least 1931.[1] Important-

---

1. *See, e.g., Sholer*, 2011 OK 24, 256 P.3d 38; *Scott*, 2008 OK 45, ¶ 10–14, 191 P.3d 1207 (defendant has no duty to guard against open and obvious hazards, but whether a hazard is open and obvious may be a question of fact for the jury); *Tucker*, 2004 OK 71, 102 P.3d 660; *Kastning v. Melvin Simon & Assoc., Inc.*, 1994 OK 68, ¶ 6, 876 P.2d 239 ("It is well established that a landowner has no duty to warn of dangers that are open and obvious."); *Turner v. Rector*, 1975 OK 172, ¶ 10, 544 P.2d 507 ("There is no obligation to warn an invitee, who knew the condition of a property, against patent and obvious dangers, and there is no actionable negligence in the absence of a duty neglected or violated.") (quoting *Jackson v. Land*, 1964 OK 102, ¶ 0, 391 P.2d 904); *Nicholson v. Tacker*, 1973 OK 75, ¶ 19, 512 P.2d 156 ("the fact that the danger is

ly, this Court has routinely applied this doctrine and found no duty even in situations where the hazard was in some way created by the property owner.[2] This Court stated the rule very clearly in *Nicholson v. Tacker*, 1973 OK 75, ¶ 11, 512 P.2d 156 (emphasis added): "[j]ust because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable."

## II.

## The Majority's Reliance on *Brown v. Alliance Real Estate Group* and *Krokowsky v. Henderson Nat. Corp.* is Misplaced Because Wood Was Aware of the Ice and the Danger it Presented.

¶ 6 The majority's assertion that Defendant Mercedez–Benz of Oklahoma City owed a duty to Plaintiff Erica Wood to take remedial measures to protect her from the icy conditions surrounding its facility rests on two main points. First, quoting *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 6, 976 P.2d 1043, the majority asserts that a landowner does have a duty to exercise ordinary care to prevent injury to another whenever the circumstances are such that the owner, as an ordinary prudent person, could reasonably foresee that another will be in danger of injury as a probable consequence of the owner's actions. Second, citing *Krokowski v. Henderson Nat. Corp.*, 1996 OK 57, ¶¶ 7–8, 917 P.2d 8, the majority asserts that this Court has rejected the open and obvious doctrine for a hazardous accumulation of ice caused or enhanced by the landowner, and determined that the creation of such a dangerous condition would impose a duty on the owner to exercise care for the protection of third parties.

¶ 7 Both *Brown* and *Krokowski* rely extensively on another decision of this Court, *Buck v. Del City Apartments, Inc.*, 1967 OK 81, 431 P.2d 360, and a firm understanding of this Court's determination in *Buck* is essential for understanding why the majority's reliance on *Brown* and *Krokowski* is misplaced. In *Buck*, a plaintiff sued a motel owner after injuring herself in a fall on ice, that had accumulated on the porch steps and that she did not see. 1967 OK 81, ¶ 18, 431 P.2d 360. After discussing application of the open and obvious doctrine, this Court determined that the plaintiff could not recover because:

> It is clear from the evidence that the wife **knew or should have known of the general weather conditions. The dangers from them are universally known and were equally as apparent to her as they were to the motelkeepers.** There is no evidence here that the usual hazard from the icy condition was in any way increased by an act of the motelkeepers. Where there is no act on the part of the owner or occupant of the premises creating a greater hazard than that brought about by natural causes, dangers created by the elements, such as the forming of ice and the falling of snow, are **universally known,** and all persons on the property are expected to assume the burden of protecting themselves from them.

*Buck*, 1967 OK 81, ¶ 22, 431 P.2d 360. This Court determined that the landowner in

---

open and obvious nullifies duty of defendant to plaintiff."); *C.R. Anthony Co. v. Million*, 1967 OK 231, ¶¶ 7–8, 435 P.2d 116 (An "owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care.") (quoting *Safeway Stores v. McCoy*, 1962 OK 194, ¶ 8, 376 P.2d 285); *Jackson*, 1964 OK 102, ¶ 0, 391 P.2d 904 ("there was no obligation to warn an invitee, who knew the condition of a property, against patent and obvious dangers, and there was no actionable negligence in the absence of a duty neglected or violated.") (citing *Long Const. Co. v. Fournier*,

1942 OK 83, ¶ 10, 190 Okla. 361, 123 P.2d 689); *City of Tulsa v. Harman*, 1931 OK 73, ¶ 37, 299 P. 462 ("an injured party will not be permitted to recover damages where he did in fact fully appreciate the peril; so, in respect of such perils as may be said to be patent or obvious, there is no obligation to give any sort of warning.")

2. *See, e.g., Scott*, 2008 OK 45, ¶ 21, 191 P.3d 1207 (clearance beam on owner's property was an open and obvious hazard); *Nicholson*, 1973 OK 75, ¶ 11, 512 P.2d 156 (defective fishing dock was an open and obvious hazard); *Pickens*, 1997 OK 152, ¶ 11, 951 P.2d 1079 (retaining wall was an open and obvious hazard).

*Buck* did not owe a duty because the injured person should have known of the general weather conditions and the dangers from them, i.e. ice, were universally known and were as apparent to her as they were to the motelkeepers. *Buck,* 1967 OK 81, ¶ 22, 431 P.2d 360. The Court's determination was therefore in keeping with its application of the long standing rule of the open and obvious doctrine, which it reiterated:

[t]he law does not require the owner or occupant of land to warrant that the invitee shall suffer no injury upon the premises; his duty is discharged when reasonable care is taken to prevent the invitee's exposure to dangers which are more or less hidden, and not obvious.

*Buck,* 1967 OK 81, ¶ 21, 431 P.2d 360.

¶ 8 In *Brown,* 1999 OK 7, 976 P.2d 1043, this Court clarified the principles set out in *Buck.* Notably, this Court clarified that *Buck* did not declare that under no circumstances may a premises liability claim be maintained for an accident attributable to a natural accumulation of snow and ice. *Brown,* 1999 OK 7, ¶ 4, 976 P.2d 1043. In other words, the *Buck* ruling does not mean that natural accumulations of snow and ice are never open and obvious as a matter of law. **However, "***Buck* reasoned that perceptible hazards created by the elements, such as the accumulation of ice and snow, are universally appreciated by all reasonable people using due care and circumspection. *Buck* **teaches that an accumulation of ice or snow, visible upon due care and circumspection, does not constitute a hidden danger such that the premises owner is under a duty to give warning."** *Brown,* 1999 OK 7, ¶ 4, 976 P.2d 1043.

¶ 9 The majority quotes a single point from *Brown* concerning foreseeability, but ignores the factual underpinnings of the case. *Brown,* 1999 OK 7, ¶ 6, 976 P.2d 1043 reads **in full:**

The summary judgment evidentiary material tends to show **not only that the pavement in front of the real estate office had a deceptively innocent appearance, but also that the premises owner was on notice of the dangerous patch of invisible ice because of another accident that occurred earlier the same day.** Consis-

tent with *Buck,* a premises owner does have a duty to exercise ordinary care to prevent injury to another whenever the circumstances are such that the owner, as an ordinary prudent person, could reasonably foresee that another will be in danger of injury as a probable consequence of the owner's actions.

In other words, the owner had a duty to protect the plaintiff in *Brown* from the black ice because 1) it was not an ordinarily perceptible hazard (nor did the particular plaintiff see it) and 2) the owner knew it was there and dangerous because it had already caused an accident. *Brown,* 1999 OK 7, ¶¶ 5–6, 976 P.2d 1043. The owner in *Brown* had specific knowledge of a non-obvious danger that might injure someone on the property. Under those facts, the potential harm to others and the likelihood that others would fail to perceive it was foreseeable. Central to the entire determination in *Brown,* and its application of *Buck,* is the fact that the black ice was not something a visitor could be expected to see or appreciate the danger of.

¶ 10 The majority's reliance on *Krokowski* is also misplaced. In *Krokowski,* this Court applied the core holding of *Buck* to a plaintiff who claimed to have slipped on ice allegedly caused not by natural weather conditions, but by the placement of a landlord's drain pipe. The Court in *Krokowski* determined that an issue of fact existed as to whether the plaintiff's injury was due to natural accumulation of ice, or by an increase in the natural hazard caused by the placement of the drain pipe. *Krokowski,* 1996 OK 57, ¶ 8, 917 P.2d 8.

¶ 11 The majority reads *Krokowski* to hold that a landlord owes a duty to guard against any harm caused by an unnatural icy hazard whether the injured party was aware of the hazard or not. This is not the case. *Krokowski* relies upon and quotes a specific passage from *Buck:*

"... It is clear from the evidence that the wife knew or should have known of the general weather conditions. The dangers from them are universally known and were equally as apparent to her as they were to the motelkeepers. **There is no evidence here that the usual hazard from the icy condition was in any way increased by**

an act of the motelkeepers. Where there is **no act on the part of the owner or occupant** of the premises creating a greater hazard than that brought about by natural causes, dangers created by the elements, such as the forming of ice and the falling of snow, are universally known, and all persons on the property are expected to assume the burden of protecting themselves from them . . . "

*Krokowski,* 1996 OK 57, ¶ 6, 917 P.2d 8 (quoting *Buck,* 1967 OK 81, ¶ 22, 431 P.2d 360).

This entire passage indicates that a duty may exist in situations where a property owner increases the hazard caused by natural weather conditions beyond what a visitor could be assumed to be aware of, because while the natural dangers of ice are known, extra ice caused by the landlord's actions may not be something a visitor expects. Remember that the visitor in *Buck* slipped on ice she did not see. The landlord owed no duty because she should have known of the natural dangers of ice even if she was subjectively unaware of its presence.

¶ 12 In this cause, there is no question whatsoever that Wood was aware of the ice surrounding the dealership. As the majority states, she knew it was important to be careful because she observed ice covering the entire entrance area. This is not a situation analogous to *Krokowski* or *Brown* where the owner's actions created an enhanced danger beyond the normal danger of ice, or where there was hidden black ice of which the property owner had prior notice. Even though the ice was formed by sprinklers and not natural precipitation, Wood recognized the ice for what it was and was aware of the danger it presented. This is not a question of what Wood should have known. It is a question of what she did know. By attempting to carve out an exception to the open and obvious doctrine, the majority would erode the clear rule that a property owner owes no duty as a matter of law to guard against dangers that are open and obvious to visitors. This court summed up the rule clearly in *Buck,* and nothing within this Court's holding in *Krokowski* or *Brown* has altered it:

20 **The owner or person in charge of the premises has no obligation to warn an invitee, who knew or should have known the condition of a property, against patent and obvious dangers.** The invitee assumes all normal or ordinary risks incident to the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to remove known and obvious hazards, nor is he liable to an invitee for an injury resulting from a danger which was obvious and should have been observed in the exercise of ordinary care.

21 **The duty to keep premises in a reasonably safe condition for the use of the invited public applies solely to defects or conditions which may be characterized as in the nature of hidden dangers, traps, snares, pitfalls, and the like— things which are not readily observable.** The law does not require the owner or occupant of land to warrant that the invitee shall suffer no injury upon the premises; his duty is discharged when reasonable care is taken to prevent the invitee's exposure to dangers which are more or less hidden, and not obvious. In the absence of a duty neglected or violated, there can be no actionable negligence

*Buck,* 1967 OK 81, ¶¶ 20–22, 431 P.2d 360 (emphasis added).

### Conclusion

¶ 13 Actionable negligence requires breach of a duty on the part of the defendant. *Berman,* 2011 OK 106, ¶ 16, 268 P.3d 68; *Smith,* 2011 OK 51, ¶ 12, 261 P.3d 1129; *Scott,* 2008 OK 45, ¶ 17, 191 P.3d 1207. In premises liability, the duty owed by the defendant is determined by the classification of the entrant, but regardless of the entrant's classification, the defendant owes no duty to guard against hazards that are open and obvious. *Sholer,* 2011 OK 24, ¶ 12, 256 P.3d 38; *Scott,* 2008 OK 45, ¶ 21, 191 P.3d 1207; *Buck,* 1967 OK 81, ¶ 20, 431 P.2d 360.

¶ 14 The rule of *Buck, Krokowski,* and *Brown* is this: a property owner owes no duty to safeguard an invitee from dangers created by ice, even ice the property owner has created, if the danger was, under the

facts, open and obvious to the invitee. Those cases were concerned with what visitors should know or should be assumed to know, whereas this cause concerns what a visitor did know. Without question, the facts indicate that Wood was aware of the ice and the risk it presented. The actions of Mercedes–Benz did not create a hidden danger. Summary judgment was proper, as under the facts of this case, Mercedes–Benz owed no duty to Wood.